## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

CLYDE PONTEFRACT,

<em>Plaintiff,</em>

v.

UNITED STATES OF AMERICA

<em>Defendant.</em>

Civil Action No. 24-7174 (RMB) (EAP)

**OPINION**

**BUMB,** Chief District Judge.

**THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendant United States of America (the "Government") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), seeking dismissal of Plaintiff's claims under the Federal Tort Claims Act arising from the Bureau of Prisons' management of the COVID-19 pandemic. (Motion to Dismiss ("Motion") Docket No. 11.) Plaintiff Clyde Pontefract ("Plaintiff"), proceeding *pro se*, has filed an opposition. (Opposition Brief ("Opp. Br.") Docket No. 18.) Having considered the parties' submissions, the Court resolves the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); D.N.J. Loc. Civ. R. 78.1(b). For the reasons set forth below, the Government's Motion to Dismiss is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the Complaint on June 21, 2024. ("Compl." Docket No. 1.) After conducting the requisite screening review, the Court ordered the Complaint filed and

summons issued on March 21, 2025. ("Order, March 21, 2025" Docket No. 3.) The Government filed its Motion to Dismiss on September 19, 2025. On October 3 and November 4, 2025, the Government filed notices of Standing Order 2025-06, which stayed certain civil matters involving the United States as a party. (Notices, Docket Nos. 12–13.) After the Government encountered difficulties ensuring service on Plaintiff, (Letter, November 25, 2025, Docket No. 14), and Plaintiff filed a letter request for an extension (Letter, December 4, 2025, Docket No. 15). The Court entered an order directing Plaintiff to file a written response within 30 days, (Order December 17, 2025, Docket No. 17.) Plaintiff timely filed his opposition on January 13, 2026. (Opp. Br., Docket No. 18.) The motion is now ripe for decision.[1]

Plaintiff is a federal inmate serving a 30-year sentence for Production of Child Pornography in violation of 18 U.S.C. § 2251(a), imposed by the United States District Court for the Western District of Louisiana in January 2012. *See United States v. Pontefract*, No. 08-cr-69 (W.D. La. Jan. 17, 2012). He is currently incarcerated at FCI Ashland. (Compl. ¶ 5.)

Plaintiff brings this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, challenging the Federal Bureau of Prisons' ("BOP") management of the COVID-19 pandemic at FCI Elton

---

[1] Plaintiff separately invokes 28 U.S.C. § 1331 as an independent jurisdictional basis for his Eighth Amendment claim. (Compl. ¶¶ 2, 60.) Plaintiff is no longer incarcerated at either FCI Elton or FCI Fort Dix, mooting any claim for equitable relief. *See Tucker v. Sebelius*, No. 12-cv-5900 (RBK/AMD), 2013 WL 6054552, at *6 (D.N.J. Nov. 15, 2013); *Pauley ex. rel. Asatru/Odinist Faith Cmty. v. Samuels*, No. 19-3666, 2022 WL 1552125, at *2 (3d Cir. May 17, 2022) (*per curiam*).

in Ohio and FCI Fort Dix in New Jersey. (*Id.* ¶¶ 1, 8.) His allegations closely mirror those advanced by the plaintiffs in three prior cases before this Court: *Thieme v. United States*, No. 21-cv-682 (RMB) (D.N.J.)[2]; *Floyd v. United States*, No. 22-cv-1229 (RMB) (D.N.J.); and *Lackner v. United States*, No. 22-cv-4951 (RMB) (D.N.J.).

With respect to FCI Elkton, Plaintiff alleges that beginning in March 2020, BOP failed to maintain adequate social distancing, provided inadequate hygiene supplies, issued defective masks, conducted insufficient COVID-19 testing, and moved infected and non-infected inmates together in ways that accelerated transmission. (Compl. ¶¶ 21, 26–30.) Plaintiff alleges he contracted COVID-19 around late March to mid-April 2020—though he did not test positive at that time and recovered after approximately four days without seeking medical treatment. (*Id.* ¶ 29.) He subsequently tested positive for COVID-19 on June 30, 2020, was moved to an isolation unit, and tested negative approximately one month later. (*Id.* ¶¶ 33–35.) Additionally, Plaintiff alleges that during his transfer from FCI Elkton to FCI Fort Dix in October 2020, BOP staff failed to wear required face coverings during transit. (*Id.* ¶ 45.)

With respect to FCI Fort Dix, Plaintiff alleges BOP continued to mix COVID-positive and -negative inmates during transfers to isolation areas, failed to maintain

---

[2] The Court refers to the three prior opinions in *Thieme v. United States*, No. 21-cv-682 (RMB) (D.N.J.), as "Thieme I," "Thieme II," and "Thieme III" in the order in which they were decided. *Thieme I* refers to *Thieme v. United States*, No. 21-cv-682 (RMB), 2023 WL 2584102 (D.N.J. Mar. 21, 2023); *Thieme II* refers to *Thieme v. United States*, No. 21-cv-682 (RMB), 2023 WL 8271766 (D.N.J. Nov. 30, 2023); and *Thieme III* refers to *Thieme v. United States*, No. 21-cv-682 (RMB), 2025 WL 2490526 (D.N.J. Aug. 29, 2025).

3

adequate ventilation in housing units, and took insufficient precautions to prevent ongoing transmission. (*Id.* ¶¶ 46–58.) Plaintiff does not allege that he tested positive for COVID-19 at any point following his arrival at FCI Fort Dix, though he alleges recurring COVID-like symptoms. (*Id.* ¶ 56.)

Based on these allegations, Plaintiff asserts two causes of action under the FTCA: Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED"). (*Id.* ¶¶ 69–81.) He seeks $10,000,000 in damages for himself and $10,000,000 on behalf of all similarly situated inmates, as well as future Long-COVID medical expenses. (*Id.*, Demand for Judgment.) Plaintiff also invokes the Eighth Amendment and 28 U.S.C. § 1331, alleging that BOP's conduct constituted deliberate indifference to a substantial risk of serious harm in violation of the Cruel and Unusual Punishments Clause—an argument advanced primarily to negate the discretionary function exception to his FTCA claims. (*Id.* ¶¶ 59–68.)

To the extent Plaintiff purports to bring this action on behalf of "all like" federal inmates—styling the caption "CLYDE PONTEFRACT, *et al.*" and seeking $10,000,000 for the class of similarly situated prisoners—those claims are dismissed on an independent threshold ground. A *pro se* litigant lacks authority to represent a putative class or to assert claims on behalf of third parties. *See Caputo v. Fauver*, 800 F. Supp. 168, 170 (D.N.J. 1992) ("Every court that has considered the issue has held that a prisoner proceeding *pro se* is inadequate to represent the interests of his fellow inmates in a class action." (citation modified)); *accord Fymbo v. State Farm Fire & Cas.*

*Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000). This action therefore proceeds—and is adjudicated—solely as to Plaintiff's individual claims.

## II.   LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "attacks the right of a plaintiff to be heard in Federal Court." *Doughty v. U.S. Postal Serv.*, 359 F. Supp. 2d 361, 364 (D.N.J. 2005) (citation omitted). Unlike a Rule 12(b)(6) motion, a 12(b)(1) challenge may be raised at any time, and the burden of establishing jurisdiction rests squarely with the party asserting it. *See* Fed. R. Civ. P. 12(h)(3); *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 361 (3d Cir. 2001).

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d

Cir. 2005). It need not, however, credit "bald assertions" or "legal conclusions." *Id.* (citation omitted).

Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). A *pro se* plaintiff is not exempt from the obligation to plead sufficient facts to support his claims. *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 328 (D.N.J. 2016).

## III.   DISCUSSION

### A. Subject Matter Jurisdiction Under the FTCA

The United States, as sovereign, is immune from suit absent a clear and unequivocal waiver of that immunity. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607 (1980). The FTCA constitutes a limited waiver of sovereign immunity for certain tort claims, 28 U.S.C. § 1346(b)(1), but that waiver is circumscribed by several enumerated exceptions. Where an exception applies, sovereign immunity is unwaived, and this Court lacks subject matter jurisdiction over the claim. *See Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996); *Beneficial Consumer Disc. Co. v. Poltonowicz*, 47 F.3d 91, 93–94 (3d Cir. 1995). As a threshold matter, Plaintiff has satisfied the FTCA's administrative exhaustion requirement. 28 U.S.C. § 2675(a). The BOP denied his administrative tort claim on December 21, 2023, (Compl. ¶ 3), and Plaintiff filed this action on June 21, 2024, within the six-month period prescribed by 28 U.S.C. § 2401(b). The Court therefore proceeds to the Government's jurisdictional arguments. The discretionary function

exception, 28 U.S.C. § 2680(a), deprives this Court of jurisdiction over the bulk of Plaintiff's claims.

### 1. *Discretionary Function Exception*

The FTCA does not waive sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [is] abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. Varig Airlines*, 467 U.S. 797, 808, 104 S. Ct. 2755, 81 L. Ed. 2d 660 (1984). Through it, Congress sought to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499 U.S. 315, 323, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991) (internal quotation marks and citation omitted).

Courts apply a two-part test. First, whether the conduct at issue involves an element of judgment or choice, rather than adherence to a mandatory or ministerial directive—that is, whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Cestonaro v. United States*, 211 F.3d 749, 753 (3d Cir. 2000) (quoting *Berkovitz v. UnFloited States*, 486 U.S. 531, 536 (1988)). Second, if discretion exists, whether the challenged conduct is "susceptible to policy analysis"—that is, "of the kind that the discretionary function exception was designed to shield." *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir.

2012) (internal quotation marks and citation omitted); *Gaubert*, 499 U.S. at 325 & n.7. Critically, the inquiry "is not on the agent's subjective intent in exercising the discretion conferred" but "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

The discretionary function exception applies to all of Plaintiff's pandemic-management claims. Because this Court lacks subject matter jurisdiction over those claims, they must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff's primary opposition to dismissal is the contention that BOP's COVID-19 management violated the Eighth Amendment's Cruel and Unusual Punishments Clause by demonstrating deliberate indifference to a serious health risk—and that because unconstitutional conduct falls outside the discretionary function exception, the FTCA bar does not apply. (Opp Br.) Plaintiff relies principally on *Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993), and the Third Circuit's decision in *Xi v. Haugen*, 68 F.4th 824 (3d Cir. 2023). The Court has previously engaged with this argument and rejected it. It does so again here.

The Third Circuit held in *Xi v. Haugen* that "unconstitutional government conduct is *per se* outside the discretionary function exception" because a government employee lacks the authority to violate the Constitution. 68 F.4th at 839; *see Floyd v. United States*, No. 22-1229 (RMB), 2024 WL 3064671, at *32 (D.N.J. June 20, 2024) (quoting *Xi*, 68 F.4th at 837–38). The Court accepts this principle. The operative question, however, is not whether the principle exists, but whether Plaintiff has plausibly alleged a constitutional violation sufficient to invoke it. The answer is no.

8

The Eighth Amendment's deliberate indifference standard is two-pronged. The objective prong requires a showing that the plaintiff was exposed to a "sufficiently serious" risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The subjective prong requires that the official both knew of and disregarded that risk—meaning the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[ew] the inference." *Id.* at 837. Critically, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. The subjective prong is a demanding one, and it is not satisfied by alleging that officials failed to implement optimal or ideal protections.

The Third Circuit's decision in *Hope v. Warden York County Prison* makes clear that the Constitution does not demand the elimination of all risk of COVID-19 transmission. 972 F.3d 310, 330–31 (3d Cir. 2020). Instead, the question is whether officials took reasonable measures to address a known risk, and the existence of imperfect or evolving mitigation efforts does not, without more, establish deliberate indifference. *Id.* And in *United States v. Raia*, 954 F.3d 594 (3d Cir. 2020), the Third Circuit cautioned that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify" a finding of constitutionally culpable disregard. *Id.* at 597. Plaintiff's allegations, at their core, amount to no more than this.

9

This Court's own precedent, moreover, has consistently held that BOP's COVID-19 response at these precise facilities does not satisfy the deliberate indifference standard. In *Thieme III*, the Court held that BOP "[m]anaged the FCI Elkton transfers without deliberate indifference to prisoner health and safety." 2025 WL 2490526, at *4. In *Lackner*, even accepting imperfect implementation of BOP's Action Plan, the Court found that officials "were not deliberately indifferent by failing to adopt the 'ideal' protections from COVID when circumstances and resources did not allow them to do so." *Lackner v. United States*, No. 22-cv-4951 (RMB), 2025 WL 314965, at *8 (D.N.J. Jan. 28, 2025) (citation omitted). In *Floyd*, the Court found dismissal appropriate because the plaintiff "has not alleged that FCI Fort Dix had no valid reason to adapt the CDC quarantine/medical isolation policy" and therefore "has not sufficiently pled that [BOP] acted with deliberate indifference to his health." 2024 WL 3064671, at *11. The Court could not "conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [BOP personnel] acted unreasonably." *Thieme III,* 2025 WL 2490526, at 8 (quoting *Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020)).

Plaintiff's own Complaint further undermines his constitutional argument. He alleges, in some detail, BOP's implementation of a multi-phase COVID-19 Action Plan beginning in January 2020: mandatory screening of arriving inmates and staff, quarantine and isolation procedures, cohort housing, restrictions on movement, and efforts to reduce population density through facility transfers. (Compl. ¶¶ 14–20.) Plaintiff himself draws on *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020)—a case

10

arising from COVID-19 conditions at FCI Elkton itself—in describing these measures. (*Id.* ¶¶ 21–25.) That reliance is self-defeating. The Sixth Circuit in *Wilson* held that BOP's multi-phase COVID Action Plan—the very plan Plaintiff describes—demonstrated that officials "[took] the risk of COVID-19 seriously" and made "consistent efforts to reduce th[e] risk", defeating deliberate indifference as a matter of law. 961 F.3d at 840–41 (citations omitted). The existence of that plan, however imperfectly executed, forecloses the culpable mental state that deliberate indifference requires. *Id.* Without plausibly alleging that BOP had a safer course of action reasonably available and chose not to take it, Plaintiff cannot state an Eighth Amendment violation. *See Floyd*, 2024 WL 3064671, at *11.

The Third Circuit's decision in *Hope* reinforces this conclusion in terms that apply directly to Plaintiff's theory of liability. The court in *Hope* held that criticizing officials for a "lack of 'effective containment measures,' and for not doing 'nearly enough' to combat COVID-19 [is] not tantamount to establishing the [defendants'] deliberate indifference." 972 F.3d at 330. Courts in this District have applied *Hope* to reach the same conclusion on closely analogous facts. In *Mills v. Board of Chosen Freeholders*, No. 22-6450, 2023 WL 24357, at *3 (D.N.J. Jan. 3, 2023), the court observed that conditions during a pandemic "are not excessive in light of the difficulties in operating a detention facility during a pandemic, where staff is likely stretched thin due to illness and extra duties." And in *Lawson v. Hudson County Board of Freeholders*, No. 22-4340, 2023 WL 6971540, at *11 (D.N.J. Oct. 23, 2023), the court held that "[i]mperfections in masking, testing, and quarantining procedures—

11

particularly in the challenging environment of a detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment." That formulation captures, in a sentence, why Plaintiff's allegations fall short here.

Plaintiff's invocation of *Helling v. McKinney* does not alter this analysis. *Helling* held that a prisoner may state an Eighth Amendment claim based on exposure to conditions posing an unreasonable risk of serious damage to future health, even where the injury has not yet fully materialized. 509 U.S. at 35. The Court does not dispute that principle. But *Helling* neither eliminated nor relaxed the subjective prong of the deliberate indifference inquiry. *See Farmer*, 511 U.S. at 842–43 (expressly reaffirming both prongs post-*Helling*). Indeed, *Helling* itself remanded for the district court to apply both prongs. 509 U.S. at 36–37. Plaintiff must plead that BOP officials subjectively disregarded a known excessive risk to his health—and he has not done so.

This case is also readily distinguished from circumstances where deliberate indifference has been found. Courts have imposed liability where prison officials persisted in demonstrably ineffective measures over an extended period despite actual knowledge of an ongoing, uncontrolled outbreak. *See, e.g.*, *DeGidio v. Pung*, 704 F. Supp. 922, 938–39 (D. Minn. 1989) (finding liability where officials knowingly continued inadequate practices over years despite a documented, active tuberculosis crisis). Plaintiff alleges no comparable pattern of knowing persistence in the face of actual failure. To the contrary, the Complaint describes BOP's iterative, multi-phase response to COVID-19 at FCI Elkton and FCI Fort Dix. The fact that transmission

occurred notwithstanding those measures does not transform reasonable, good-faith pandemic management into deliberate indifference.

Because Plaintiff has not plausibly alleged that BOP acted with constitutionally culpable disregard, the exception recognized in *Xi v. Haugen* affords no basis for relief. The discretionary function exception bars his FTCA claims arising from BOP's housing, testing, transfer, and quarantine decisions, and thus deprives this Court of subject matter jurisdiction over those claims, requiring dismissal pursuant to Rule 12(b)(1).

### 2. *Face-Covering Claim*

Plaintiff's allegation that BOP staff failed to wear face coverings during his October 2020 transfer to FCI Fort Dix stands on analytically different ground. This Court previously held that a BOP memorandum requiring staff to wear face coverings when social distancing was not possible constitutes a mandatory directive, not a discretionary one. *See Thieme II*, 2023 WL 8271766, at *5. The face-covering claim therefore falls outside the discretionary function exception. Nevertheless, the claim must be dismissed for an independent reason: Plaintiff has failed to plausibly allege causation.

Plaintiff does not allege that he tested positive for COVID-19 upon arrival at or at any subsequent point during his tenure at FCI Fort Dix. (Compl. ¶¶ 46, 56.) He alleges instead that he experienced COVID-like symptoms but repeatedly tested negative. (*Id.* ¶ 56.) The causal connection between unmasked BOP staff during a single bus transfer and any COVID-19 infection Plaintiff may have suffered is, on these

13

facts, speculative as a matter of law. "There are many potential intervening causes with a highly transmissible virus, and it would be virtually impossible to determine the cause." *Lackner*, 2025 WL 314965, at *7; *accord Thieme III*, 2025 WL 2490526, at 8. Because the "causation theory with respect to staff masking is too speculative, the Court has no jurisdiction to consider [it] under the FTCA." *Thieme III*, 2025 WL 2490526, at *8 (citing *Brownback v. King,* 592 U.S. 209, 212, 141 S. Ct. 542, 208 L. Ed. 2d 448 (2021)); *see also* 28 U.S.C. § 1346. Because the face-covering claim founders on the same jurisdictional causation requirement, it too is dismissed under Rule 12(b)(1).

## B. Failure to State a Claim

Even if any of Plaintiff's claims survived the jurisdictional bar—and, for the reasons set forth above, none do—Plaintiff has independently failed to state claims for IIED or NIED under controlling New Jersey law.

### 1. *Intentional Infliction of Emotional Distress*

Under New Jersey law, an IIED claim requires establishing: (1) extreme and outrageous conduct; (2) intent to commit both the act and cause emotional distress; (3) proximate cause; and (4) emotional distress so severe that no reasonable person could endure it. *Kanofsky v. Univ. of Med. & Dentistry of N.J.*, 50 F. App'x 546, 548 (3d Cir. 2002) (citing *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). As a threshold matter, it is for the Court to determine "whether a defendant's conduct meets" the extreme-and-outrageous standard as a matter of law. *Jevremovic v. Courville*, No. 22-cv-4969 (ZNQ) (RLS), 2025 WL 1911696, at *18–19 (D.N.J. July 11, 2025) (citations omitted). Plaintiff's claim fails on multiple independent grounds.

First, BOP's conduct does not meet the extreme-and-outrageous threshold. That standard demands conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Van Brunt v. Wells Fargo Bank, N.A.*, No. 19-cv-170 (ZNQ) (TJB), 2022 WL 4366414, at *9 (D.N.J. Sept. 21, 2022) (citation omitted). A plaintiff cannot prevail simply by showing that a defendant "acted unjust, unfair, and unkind." *Id.* (citation omitted). New Jersey courts describe this as an "elevated threshold" satisfied "only in extreme cases," *Ingraham v. Ortho-McNeil Pharm.*, 25 A.3d 1191, 1195 (N.J. Super. Ct. App. Div. 2011), and courts have reserved it for conduct such as deliberately shutting off heat and water to force tenants out of their homes, *see 49 Prospect St. Tenants Ass'n v. Sheva Gardens, Inc.*, 547 A.2d 1134, 1147–48 (N.J. Super. Ct. App. Div. 1988), or knowingly falsely diagnosing a child with cancer, *see Hume v. Bayer*, 428 A.2d 966, 970–71 (N.J. Super. Ct. Law Div. 1981). BOP's management of an unprecedented and rapidly evolving global pandemic within the inherent constraints of a correctional facility does not remotely approach this standard. This Court has recognized that BOP made "reasonable efforts to minimize serious risks to prisoner health and safety" during a genuinely unprecedented public health crisis, and has declined to conclude that officials "acted unreasonably" when "faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility." *Thieme III*, 2025 WL 2490526, at 8 (quoting *Swain*, 961 F.3d at 1289).

15

Second, Plaintiff has failed to plausibly allege that any specific act or omission by BOP proximately caused his emotional distress. His IIED theory rests not on a discrete wrongful act but on diffuse complaints about institutional pandemic management across two facilities over the better part of three years. New Jersey law requires a plaintiff to connect the defendant's particular extreme conduct to his alleged distress with particularity; a generalized account of systemic failure does not suffice. *See Buckley*, 544 A.2d at 863 (requiring proximate causation between the specific extreme conduct alleged and the distress suffered). Given the many potential intervening causes inherent in a rapidly evolving pandemic—population movement between facilities, community transmission, asymptomatic spread, and varying individual susceptibility—Plaintiff cannot plausibly trace his ongoing symptoms and anxiety to any identifiable BOP decision. *See Lackner*, 2025 WL 314965, at *7 ("[T]here are many potential intervening causes with a highly transmissible virus, and it would be virtually impossible to determine the cause."); *accord Thieme III*, 2025 WL 2490526, at *8. The absence of any positive COVID-19 test following Plaintiff's transfer to FCI Fort Dix further underscores the speculative nature of the causal theory underlying his emotional distress claim. (Compl. ¶¶ 46, 56.)

Third, Plaintiff's alleged emotional distress is legally insufficient. New Jersey law demands distress "so severe that no reasonable man could be expected to endure it"—distress that must manifest in "physical illness or serious psychological sequelae." *Maultsby v. RIH Acquisitions NJ, LLC*, No. 09-cv-4376 (NLH), 2011 WL 6779556, at *11 (D.N.J. Dec. 27, 2011) (citations omitted). Plaintiff alleges "fear and anxiety along

16

with headaches, tiredness, and constant cold like [sic] symptoms throughout each and every month since March of 2020 to presently." (Compl. ¶ 80.) Courts applying New Jersey law have consistently held that complaints of this nature—anxiety, headaches, fatigue, and generalized physical discomfort—fall well short of the required threshold. *See, e.g., Clark v. Nenna*, 244 A.3d 291, 295 (N.J. Super. Ct. App. Div. 2020) (collecting cases finding lack of sleep, aggravation, headaches, and depression legally insufficient); *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 298 (N.J. Super. Ct. App. Div. 2001) (plaintiff feeling "terrible," "bad," "devastated," and that "his whole personality changed" insufficient); *Aly v. Garcia*, 754 A.2d 1232, 1236–37 (N.J. Super. Ct. App. Div. 2000) ("It is not enough to establish that a party is acutely upset by reason of the incident.").

The fourth element—intent to cause emotional distress—presents an additional and independent obstacle the Court need not reach, given Plaintiff's failure on three other elements. It bears noting, however, that this element would plainly fail on these facts as well: BOP's pandemic-management decisions were driven by an institutional imperative to contain a deadly virus, not by any purpose to inflict emotional suffering on Plaintiff or anyone else. *See Jevremovic*, 2025 WL 1911696, at *7 (intent element requires that the defendant both intended the act and intended to cause the distress, or acted in reckless disregard of the high probability that distress would result). Where, as here, the conduct at issue was a good faith, if imperfect, response to a declared public health emergency, that culpable *mens rea* is not plausibly alleged. Plaintiff's IIED claim is therefore dismissed on all grounds.

17

### 2. *Negligent Infliction of Emotional Distress*

Under New Jersey law, recovery for NIED is available only through one of two paths: (1) the defendant's negligent conduct placed the plaintiff in reasonable fear of immediate personal injury, or (2) the plaintiff satisfies the *Portee* bystander factors.[3] *Jevremovic*, 2025 WL 1911696, at *7 (citing *Jablonowska v. Suther*, 948 A.2d 610, 618 (N.J. 2008)). The *Portee* factors are plainly inapplicable here. Still, in either scenario, a plaintiff must plead emotional distress "so severe that no reasonable person could be expected to endure it." *Jean-Francois v. United Airlines, Inc.*, No. 2:25-cv-12342 (BRM) (CF), 2026 U.S. Dist. LEXIS 109232, at *24 (D.N.J. Apr. 8, 2026) (citing *Segal v. Lynch*, 993 A.2d 1229, 1239 (N.J. Super. Ct. App. Div. 2010)).

Plaintiff's NIED claim fares no better. As to the first available path, Plaintiff cannot plausibly allege that BOP's conduct placed him in *reasonable fear of immediate personal injury*. His theory is one of cumulative, systemic exposure to COVID-19 risk over a period of years—not a discrete episode in which BOP's conduct placed him in sudden, immediate peril of bodily harm. New Jersey courts have distinguished these postures: the zone-of-danger rule requires a plaintiff to have been "in the zone of danger" of physical impact from a specific tortious act, not merely subject to an ambient background risk. *Ly v. Lesenskyj*, Civil Action No. 17-2203 (ZNQ) (TJB), 2023

---

[3] *See Portee v. Jaffee*, 417 A.2d 521, 528 (N.J. 1980) (recognizing a bystander cause of action for NIED where the plaintiff (1) observes the death or serious injury of another caused by defendant's negligence, (2) shares a marital or intimate familial relationship with the injured person, (3) contemporaneously perceives the injury-producing event, and (4) suffers severe emotional distress).

U.S. Dist. LEXIS 41558, at *15 (D.N.J. Mar. 13, 2023) (citing *Conrail v. Gottshall*, 512 U.S. 532, 548, 114 S. Ct. 2396, 2406, 129 L.Ed.2d 427, 443 (1994)). *See supra* § III.B.1. And his allegations of headaches, fatigue, anxiety, and recurring cold-like symptoms fall well short of the severity required under either path. *See Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1369 (D.N.J. 1990) (feelings of despondency and humiliation legally insufficient); *Aly*, 754 A.2d at 1236–37. Plaintiff's NIED claim is dismissed.

### C. Plaintiff's Request for Discovery

Plaintiff alternatively requests that the Court permit discovery to allow him access to New Jersey state court decisions bearing on his emotional distress claims. (Opp. Br. at 9–10.] The request is denied. Discovery is a tool for developing facts, not a mechanism for legal research, and the Court's conclusions here rest entirely on legal analysis of undisputed or judicially noticeable material. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (discovery not appropriate where jurisdictional defects are legal rather than factual in nature).

As to the New Jersey emotional distress cases, the governing legal standards for IIED and NIED are well-established, and the Court's threshold determinations—that BOP's conduct was not extreme and outrageous and that Plaintiff's alleged distress is legally insufficient—are matters of law for the Court to resolve, not questions that more caselaw could change. *See Jevremovic*, 2025 WL 1911696, at *7 (whether conduct is extreme and outrageous is a threshold question of law). Additional research access would not alter those conclusions.

## IV.    CONCLUSION

The Court addresses the appropriate form of dismissal for each category of claims. The FTCA jurisdictional bars—the discretionary function exception and the causation-based bar on the face-covering claim—are structural limitations on this Court's subject matter jurisdiction.[4] Accordingly, Plaintiff's FTCA claims—including the pandemic-management claims barred by the discretionary function exception and the face-covering claim dismissed on jurisdictional causation grounds—are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

The IIED and NIED claims present a different posture. Those claims are dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and amendment would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The grounds for dismissal are legal, not pleading deficiencies that better facts could cure: BOP's pandemic-management conduct was not extreme and outrageous as a matter of New Jersey law irrespective of how it is repleaded, and Plaintiff's alleged symptoms do not constitute legally cognizable emotional distress under any formulation. Similarly, amendment cannot supply the requisite *mens rea* for IIED—BOP was managing a public health emergency, not acting to cause suffering— or convert Plaintiff's theory of cumulative systemic exposure into the immediate-peril

---

[4] Claims dismissed for lack of subject matter jurisdiction are ordinarily dismissed without prejudice, because a court that lacks jurisdiction has no power to adjudicate the merits. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

claim required for NIED. The IIED and NIED claims are therefore **DISMISSED WITH PREJUDICE**.

For the reasons set forth above, the Government's Motion to Dismiss is **GRANTED**. Plaintiff's FTCA claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Plaintiff's IIED and NIED claims are **DISMISSED WITH PREJUDICE**. An appropriate Order accompanies this Opinion.

Dated: **April 28, 2026**

*s/ Renée Marie Bumb*
Renée Marie Bumb
Chief United States District Judge